JENNIFER WALKER ELROD, Circuit Judge,
joined by JONES, Circuit Judge,
concurring:
I fully concur in the careful, well-reasoned majority opinion, because Bell’s rap was directed to the school and contained threats of physical violence. See Wynar v. Douglas Cnty. Sch. Dist., 728 F.3d 1062, 1069 (9th Cir.2013) (declining to consider threshold tests from other circuits and holding only that schools may discipline off-campus student speech under the Tinker standard “when faced with an identifiable threat of school violence”); see also Morse v. Frederick, 551 U.S. 393, 424, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (Alito, J., concurring) (remarking that “any argument for altering the usual free speech rules in the public schools ... must ... be based on some special characteristic of the school setting,” and recognizing only one such special characteristic: “threat[s] to the physical safety of students”); Ponce v. Socorro Ind. Sch. Dist., 508 F.3d 765, 770-72 (5th Cir.2007) (interpreting Morse to *402 allow punishment of off-campus speech threatening a mass shooting).
Most importantly, nothing in the majority opinion makes Tinker applicable off campus to non-threatening political or religious speech, even though some school administrators might consider such speech offensive, harassing, or disruptive. See Morse, 551 U.S. at 403, 409, 127 S.Ct. 2618 (majority opinion) (noting that the student speech in Morse did not “convey[ ] any sort of political or religious message” and recognizing that while “much political and religious speech might be perceived as offensive to some,” such speech “is at the core of what the First Amendment is designed to protect”) (internal quotation marks omitted); id. at 422-23, 424, 127 S.Ct. 2618 (Alito, J., concurring) (emphasizing the First Amendment’s protection of speech that comments on political or social issues and observing that “[i]t is ... wrong to treat public school officials, for purposes relevant to the First Amendment, as if they were private, nongovernmental actors standing in loco parentis ”).
Indeed, as Judge D. Brooks Smith has cautioned, because Tinker allows the suppression of student speech (even political speech) based on its consequences rather than its content, broad off-campus application of Tinker “would create a precedent with ominous implications. Doing so would empower schools to regulate students’ expressive activity no matter where it takes place, when it occurs, or what subject matter it involves — so long as it causes a substantial disruption at school.” See J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 939 (3d Cir.2011) (en banc) (Smith, J., concurring) (five-judge concurrence opining that Tinker does not apply off campus). I agree with my learned colleague on the Third Circuit that the First Amendment does not, for example, allow a public school to punish a student for “writfing] a blog entry defending gay marriage” from his home computer, even if the blog entry causes a substantial disruption at the school. Id. (Smith, J., concurring).
By my read, the majority opinion avoids such “ominous implications” and does not subject a broad swath of off-campus student expression to Tinker. Rather, it quite sensibly decides only the case before it, applying Tinker to Bell’s rap, which was intentionally directed toward the school and contained threats of physical violence. Because this cautious approach does not place public school officials in loco parentis or confer upon them a broad power to discipline non-threatening off-campus speech, I concur in full.